UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DANIEL G.,[1]

                    Plaintiff,

-against-                                                5:23-CV-1445 (LEK)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On November 17, 2023, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt. No. 1. Now before the Court is the Commissioner's motion for judgment on the pleadings. Dkt. No. 38 ("Motion"). Plaintiff did not file a brief. For the reasons that follow, the Commissioner's Motion is granted.

**II.    BACKGROUND**

On September 2, 2021, Plaintiff protectively filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability beginning July 21, 2021. Dkt. No. 11 ("Administrative Transcript" or "Tr.") at 288–301. Plaintiff's application was denied on December 28, 2021, *id.* at 135–37, and his request for administrative reconsideration was denied on July 14, 2022, *id.* at 172–73. On November 15, 2022, Administrative Law Judge

---

[1] In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Order will identify Plaintiff using only his first name and last initial.

1

("ALJ") Bruce Fein conducted a hearing, and Plaintiff testified. *Id.* at 38–59. On January 12, 2023, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. *Id.* at 21–31 ("ALJ Order"). On September 12, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner. *Id.* at 4.

### III. LEGAL STANDARDS

#### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying their findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson*, 402 U.S. at 401).

Where substantial evidence supports the ALJ's findings, the decision must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

Ordinarily, "[t]o determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court . . . examin[es] the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, "[t]he failure to file a brief by either party may result in the consideration of the record without the benefit of the party's arguments." N.D.N.Y. Gen. Ord. No. 18 at 6. When a plaintiff fails to file a brief but proceeds pro se, "General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants." *Gregorka v. Comm'r of Soc. Sec.*, No. 13-CV-1408, 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015).

## B.  Standard for Benefits

To be considered disabled, a claimant seeking SSI or DIB must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

3

> in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate SSI and DIB claims:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (cleaned up); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The claimant has the burden of proof to establish a disability at the first four steps. *Selian*, 708 F.3d at 418. However, if the claimant establishes that his impairment prevents him from performing his past work, the burden shifts to the Commissioner to prove the final step. *Id.*

## IV. THE ALJ'S DECISION

The ALJ applied the multi-step process promulgated by the Commissioner for adjudicating disability claims. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 21, 2021—the alleged onset of his disability. ALJ Ord. at

4

3.[2] At step two, the ALJ found that Plaintiff suffers from the severe impairments of left foot plantar facial fibromatosis, diabetic polyneuropathy, and dyspnea. ALJ Ord. at 4. While the ALJ recognized evidence that Plaintiff has a history of obesity, type 2 diabetes, hyperlipidemia, hypertension, sleep apnea, onychomycosis, and major depressive disorder, the ALJ found that "most, if not all, of these conditions have either resolved, required little or no treatment, or been adequately controlled with treatment." *Id.* The ALJ also found Plaintiff's medically determinable mental impairment to be non-severe. *Id.* at 4–6. At step three, the ALJ stated that Plaintiff does not have an impairment, or combination of impairments, that meet or equal one of the criteria for an impairment listed in Appendix 1 of the Regulations. *Id.* at 6. At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), except for climbing ropes, ladders, or scaffolds. *Id.* The ALJ stated that Plaintiff can "frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl," as well as "occasionally operate foot controls bilaterally." *Id.* Further, the ALJ stated that Plaintiff "should avoid concentrated exposure to unprotected heights, hazardous machinery, and pulmonary irritants, such as fumes, odors, gases, dust, and poorly ventilated areas." *Id.* After determining Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing his past relevant work as a janitor or a cleaner. *Id.* at 10.

      The ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act. *Id*.

---

[2] Citations to the ALJ Order refer to the internal pagination on the top-right corner of the ALJ Order itself.

V.  DISCUSSION

Despite receiving several extensions from the Court, *see* Dkt. Nos. 16, 27, 33, Plaintiff never filed a brief in this action. Accordingly, the Court will "consider[] the record without the benefit of [Plaintiff's] arguments." Gen. Ord. No. 18 at 6.

A.  The Commissioner's Step One Determination

At step one, a claimant must prove that they have not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Plaintiff has not engaged in substantial gainful activity since July 21, 2021, the alleged onset of his disability. ALJ Ord. at 3. The Court finds this conclusion to be supported by substantial evidence.

B.  The Commissioner's Step Two Determination

At step two, a claimant must prove that they have a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). "A severe impairment significantly limits the plaintiff's physical and/or mental ability to do basic work activities." *Laura D. v. Comm'r of Soc. Sec*, No. 21-CV-445, 2022 WL 4181570, at *6 (N.D.N.Y. Sept. 13, 2022). "The Regulations define 'basic work activities' as the 'abilities and aptitudes necessary to do most jobs,' examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting." *Id.* (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). "'Severity' is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe." *Id.*

"Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued

with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone." *Id.* "This is particularly true because the regulations provide the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity." *Id.* (citing 20 C.F.R. §§ 404.1523, 416.923; *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995)).

Here, the ALJ found Plaintiff's left foot plantar facial fibromatosis, diabetic polyneuropathy, and dyspnea to be severe impairments. ALJ Ord. at 4. The Court finds this determination to be supported by substantial evidence. The ALJ also considered Plaintiff's history of obesity, type 2 diabetes, hyperlipidemia, hypertension, sleep apnea, onychomycosis, and major depressive disorder, but found that "most, if not all, of these conditions have either resolved, required little or no treatment, or been adequately control with treatment." *Id.*

In evaluating Plaintiff's mental impairments, the ALJ determined they were non-severe. He relied upon the medical source opinion from Dr. Jeanne Shapiro, who concluded that Plaintiff "had no limitations in any area of work-related mental functioning." ALJ Ord. at 5 (citing Tr. at 569–73). The ALJ noted that Dr. Shapiro's determination was based on her mental status examination of Plaintiff and her review of Plaintiff's treatment history, which showed mostly normal mental findings and repeated denials of any psychiatric symptoms. *Id.* at 4–5 (citing Tr. at 569–78).

The ALJ was also persuaded by the prior administrative medical findings from state agency psychologists, who concluded that Plaintiff did not have any severe mental impairments, ALJ Ord. at 5 (citing Tr. at 60–86, 89–126), and the examinations conducted by Plaintiff's own medical sources, which yielded mostly normal mental findings, *id.* (citing 447–79, 496–533, 575–615, 630–67, 696–724).

Nevertheless, because the ALJ found that Plaintiff has some severe impairments, the Court need not inquire further as to whether Plaintiff's other impairments are sufficiently severe. This is because the Regulations require that the combined effects of all Plaintiff's impairments be considered, regardless of whether any impairment would be of sufficient severity on its own. *See* 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### C. The Commissioner's Step Three Determination

"Plaintiff has the burden of proof at step three to show [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009). "To meet a Listing, Plaintiff must show that [his] medically determinable impairment satisfies all of the specified criteria in a Listing." *Id.* "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "However, if an ALJ's decision lacks express rationale for finding that a claimant does not meet a Listing, a Court may still uphold the ALJ's determination if it is supported by substantial evidence." *Id.* at 273.

The Court now considers the ALJ's decision that Plaintiff's impairments did not meet or medically equal a listing. *See* ALJ Ord. at 6. As acknowledged by the ALJ, the listings that most closely relate to Plaintiff's impairments are chronic respiratory disorders and peripheral neuropathy. *Id.* The Court's review of the criteria for these listings, alongside its review of Plaintiff's medical records, indicates that the ALJ's decision was supported by substantial evidence. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

### D. The Commissioner's Step Four Determination

#### 1. RFC Determination

At step four, the ALJ first considers the residual functional capacity of the claimant. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is "the most [they] can still do despite [their]

8

limitations." *Id.* at § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Laura D.*, 2022 WL 4181570, at *7 (quoting *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. . . . Ultimately, any impairment-related limitations created by an individual's response to demands of work must be reflected in the RFC assessment." *Id.* (cleaned up). "The RFC determination 'must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.'" *Id.* (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

  Here, the ALJ determined that Plaintiff could perform medium work as defined by 20 C.F.R. §§ 404.1567(c), 416.967(c), except for climbing ropes, ladders, and scaffolds. ALJ Ord. at 6. The ALJ found that Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and occasionally operate foot controls bilaterally, but he should avoid concentrated exposure to unprotected heights, hazardous machinery, and pulmonary irritants such as fumes, odors, gases, dust, and poorly ventilated areas. *Id.*

  In making his determination, the ALJ was persuaded by the medical source opinion of Dr. Elke Lorensen. *Id.* at 7–8. Dr. Lorensen examined Plaintiff and reported mostly normal clinical findings. Tr. at 539–45. Dr. Lorensen's report indicated that while Plaintiff had difficulty walking on his heels and toes, could only squat halfway, and had limited hip and knee flexion, the rest of Plaintiff's exam was normal. *Id.* Dr. Lorensen noted that Plaintiff exhibited a normal

gait and stance, no difficulty rising from a chair, clear lungs, no significant chest wall abnormalities, and a normal pulmonary function test. *Id.* Plaintiff's heart rhythm was regular, and he had full range of motion in his joints. *Id.* Plaintiff also exhibited no muscle atrophy or sensory deficits. *Id.* Dr. Lorensen concluded that Plaintiff had only "mild limitations for prolonged standing and ambulating" and should avoid known respiratory irritants. *Id.* at 542.

The ALJ also found persuasive the medical reports from Dr. R. Mohanty and Dr. M. Perrotti. ALJ Ord. at 8. Dr. Mohanty reviewed the evidence and determined that Plaintiff had no limitations, other than the need to avoid respiratory irritants. Tr. at 60–86. Dr. Perrotti found that Plaintiff was marginally more limited, concluding that he could sustain medium exertion, but could not climb ladders, ropes, or scaffolds. *Id.* at 89–126. Dr. Perrotti also noted that Plaintiff could only "occasionally" climb stairs. *Id.* at 122.

The ALJ also reviewed the medical opinions of doctors who noted greater limitations for Plaintiff. ALJ Ord. at 8–9. Dr. Keith Sherman, Plaintiff's podiatrist, reported that Plaintiff experienced greater exertional limitations, including those related to walking and standing. Tr. at 687–92. Further, a treatment note from Dr. August Buerkle stated that Plaintiff "could do light duty work if [he] had a non-ambulatory job." *Id.* at 534–38. Dr. Shashank Bhatt, Plaintiff's primary care provider, noted that Plaintiff suffered from even greater impairments, writing that Plaintiff could not sustain even sedentary exertion. *Id.* at 625–29. However, the ALJ found these opinions unpersuasive, because they were inconsistent with the medical opinions of other doctors, unsupported by the aforementioned clinical and diagnostic findings, and inconsistent with Plaintiff's stated abilities. ALJ Ord. at 9.

Further, the ALJ gave more weight to the opinions of Drs. Lorensen, Mohanty, and Perrotti because "they are consistent with one another." *Id.* at 8. Indeed, the ALJ more heavily

relied on their reports, and not those from Drs. Sherman, Buerkle, and Bhatt, in determining Plaintiff's RFC. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding that medical opinions "need not be given controlling weight where they are contradicted by other substantial evidence in the record" and "Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

The ALJ also considered Plaintiff's statements of pain and other symptoms. ALJ Ord. at 6–7. In his decision, the ALJ noted that Plaintiff alleged "numbness and pain in both feet, respiratory issues, exhaustion, and diabetes." *Id.* at 6. The ALJ also stated that Plaintiff "testified he easily becomes out of breath" and that "his exhaustion had worsened." *Id.* at 7. The ALJ concluded that, after considering the record as a whole, Plaintiff's statements do not support limitations beyond those reflected in his RFC. *Id.* at 7.

The ALJ is "entitled to exercise discretion in reviewing the record evidence in its totality." *Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015). Indeed, the ALJ is not bound to the reports from doctors that express inconsistent findings, nor is he required to give special weight to Plaintiff's statements of pain and other symptoms. *See id.* Upon review of the ALJ's determination of Plaintiff's RFC, the Court finds that it was supported by substantial evidence.

2.  *Capability to Perform Past Relevant Work*

The ALJ must also consider whether a claimant's impairments prevent the claimant from doing their "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). In doing do, the ALJ must "compare [Plaintiff's] residual functional capacity assessment . . . with the physical and mental demands of [Plaintiff's] past relevant work." 20 C.F.R. § 404.1520(f)). "If, based on that comparison, the plaintiff is able to perform [his] past relevant work, the ALJ will find the plaintiff is not disabled within the meaning of the Act." *Rebecca H. v. Comm'r of Soc. Sec.*, No. 20-CV-1058, 2022 WL 293854, at *4 (N.D.N.Y. Feb. 1, 2022) (citing 20 C.F.R. § 404.1520(f)).

Here, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a janitor and a cleaner. ALJ Ord. at 10. The ALJ supported this finding by describing testimony from Lynn Paulson, a vocational expert, who participated in Plaintiff's hearing. *Id.*; *see* Tr. at 53–58. Ms. Paulson testified that according to the Dictionary of Occupational Titles ("DOT"), the job of "janitor," as previously performed by Plaintiff, is medium, unskilled work with a Specific Vocational Preparation rating of two. Tr. at 53–58. The job of "cleaner," as previously performed by Plaintiff, is light, unskilled work with a Specific Vocational Preparation rating of two. *Id.* Ms. Paulson further testified that an individual with Plaintiff's vocational profile and functional limitations could still perform the roles of janitor and clearer as actually and generally performed. *Id.* The ALJ was persuaded by Ms. Paulson's testimony, noting that her conclusions were derived from, and consistent with, the information contained in the DOT, as well as her knowledge, education, training, and experience as a vocational expert. ALJ Ord. at 10.

The ALJ considered Ms. Paulson testimony in conjunction with the information in the DOT and concluded that Plaintiff's RFC allowed him to perform his past relevant work as a janitor or cleaner. The Court finds this determination to be supported by substantial evidence.

Accordingly, the Court finds that the ALJ's disability determination was based upon correct legal standards and supported by substantial evidence. The Commissioner's Motion is granted.

## VI.  CONCLUSION

It is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings, Dkt. No. 38, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's complaint, Dkt. No. 1, is **DISMISSED**; and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   February 28, 2025
         Albany, New York

LAWRENCE E. KAHN
United States District Judge